**FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 17-35018 |
| Plaintiff-Appellee, | D.C. Nos. 3:15-cv-00227-RRB |
| v. | 3:06-cr-00082-RRB-1 |
| DAVID P. GEOZOS, | OPINION |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Alaska
Ralph R. Beistline, District Judge, Presiding

Argued and Submitted August 15, 2017
Anchorage, Alaska

Before: Susan P. Graber, Richard R. Clifton, and Milan D. Smith, Jr., Circuit
Judges.

Opinion by Judge Graber

GRABER, Circuit Judge:

Defendant David P. Geozos appeals the district court's denial of his 28

U.S.C. § 2255 motion to vacate, set aside, or correct his sentence. When

Defendant was sentenced in 2007, the district court determined that he was an

armed career criminal under the Armed Career Criminal Act of 1984 ("ACCA"),

18 U.S.C. 924(e), and sentenced him to 15 years in prison—the mandatory minimum sentence under ACCA. The court found that Defendant had five convictions that qualified as "violent felonies" under ACCA, but the court did not specify whether it found each of those convictions to qualify under the "residual clause" of the statute, the "force clause," or both.[1]

In <u>Johnson v. United States</u> (<u>Johnson II</u>), 135 S. Ct. 2551, 2563 (2015), the Supreme Court held that "imposing an increased sentence under the residual clause

---

[1] ACCA defines a "violent felony" as follows:

> [T]he term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another[.]

18 U.S.C. § 924(e)(2)(B). The first part of this definition (§ 924(e)(2)(B)(i)) is called the "force clause." <u>United States v. Strickland</u>, 860 F.3d 1224, 1226 (9th Cir. 2017). The second part (§ 924(e)(2)(B)(ii)) has two clauses: the "enumerated felonies clause," which lists certain generic crimes that qualify as violent felonies; and the "residual clause," which provides that any felony that "involves conduct that presents a serious potential risk of physical injury to another" is a violent felony. <u>Id.</u>

of [ACCA] violates the Constitution's guarantee of due process." The Court made that rule of constitutional law retroactively applicable to cases on collateral review in Welch v. United States, 136 S. Ct. 1257, 1268 (2016). Before Johnson II and Welch were decided, Defendant unsuccessfully moved to vacate, set aside, or correct his sentence under § 2255. Defendant now brings a second § 2255 motion. He argues that his new motion relies on the rule announced in Johnson II and that, therefore, he may bring his motion under one of the narrow exceptions to the bar on second or successive § 2255 motions. He also argues that any reliance by the sentencing court on the now-invalidated residual clause of ACCA is not harmless, because at least three of his convictions do not qualify as "violent felonies" under any of the remaining valid ACCA clauses. We agree with Defendant on both points, and we therefore reverse.

## FACTUAL AND PROCEDURAL HISTORY

In October 2006, Defendant was indicted on one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) and one count of felony possession of cocaine. In January 2007, Defendant pleaded guilty to both counts, and the Government agreed that it would dismiss the drug charge at sentencing.

The Presentence Investigation Report ("PSR"), prepared in advance of Defendant's sentencing hearing, stated that Defendant was "subject to an enhanced sentence" for the firearms charge under ACCA because of his criminal history. ACCA provides that "a person who violates [§] 922(g) . . . and has three previous convictions by any court . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another, . . . shall be fined under this title and imprisoned not less than fifteen years." 18 U.S.C. § 924(e)(1). The PSR did not specify which of Defendant's prior convictions qualified as "violent felonies" or "serious drug offenses" for ACCA purposes. There were six convictions listed in the PSR that could conceivably have qualified: (1) a 2001 conviction for assault in the third degree in Alaska, (2) a 1992 conviction for possession of cocaine in Florida, (3) a 1992 conviction for burglary in Florida, (4) a 1981 conviction for armed robbery in Florida, (5) a 1981 conviction for robbery and for using a firearm in the commission of a felony in Florida,[2] and (6) another 1981 conviction for armed robbery in Florida.

---

[2] Technically, these were two separate convictions, but only one may be counted for ACCA purposes because the convictions were for crimes that were "part of one criminal episode." United States v. McElyea, 158 F.3d 1016, 1021 (9th Cir. 1998). For simplicity's sake, we will refer to the two armed robbery convictions, the robbery conviction, and the conviction for using a firearm in the commission of a felony as the "Florida robbery convictions."

The sentencing court found that Defendant qualified as an armed career criminal, but it did not specify which of the prior convictions served as the three predicate convictions. It is clear from the record that the court did not rely on the conviction for possession of cocaine,[3] and it appears that the court found that all five of the other convictions qualified as convictions for "violent felonies." But the court did not say whether it found any or all of those convictions to qualify as a conviction for a violent felony under the residual clause of ACCA. On direct appeal, we affirmed Defendant's sentence, holding that the three Florida robbery convictions and the Alaska assault conviction qualified as convictions for violent felonies under ACCA and declining to decide whether the Florida burglary conviction qualified. United States v. Geozos, 286 F. App'x 517, 518 n.1 (9th Cir. 2008) (unpublished).

In late 2009, Defendant filed a motion to vacate his sentence under § 2255, claiming that his lawyers had provided ineffective assistance at sentencing. United States v. Geozos, No. 3:06-cr-082-RRB-JDR, 2010 WL 4942571, at *1 (D. Alaska Nov. 24, 2010). The district court denied Defendant's motion in early 2011.

---

[3] The Government concedes expressly that the conviction for possession was not a conviction for a "serious drug offense."

5

In the meantime, the Supreme Court decided <u>Johnson v. United States</u> (<u>Johnson I</u>), 559 U.S. 133 (2010), a case involving the interpretation of the "force clause" of ACCA. In <u>Johnson I</u>, the Supreme Court held that "the phrase 'physical force'" in the force clause "means <u>violent</u> force—that is, force capable of causing physical pain or injury to another person." <u>Id.</u> at 140.

Five years later, the Supreme Court invalidated the residual clause of ACCA in <u>Johnson II</u>, 135 S. Ct. at 2563. Less than one year after that, in <u>Welch</u>, 136 S. Ct. at 1268, the Court held that the rule of <u>Johnson II</u> applies retroactively to cases on collateral review.

Following the Court's decision in <u>Johnson II</u>, Defendant sought leave of this court to file a second § 2255 motion in district court. After <u>Welch</u> was decided, we granted Defendant leave, and he filed his motion. The district court denied the motion. We granted a certificate of appealability, and he now brings this timely appeal.

## STANDARD OF REVIEW

We review de novo a district court's decision to deny a § 2255 motion. <u>United States v. Reves</u>, 774 F.3d 562, 564 (9th Cir. 2014).

## DISCUSSION

6

This case presents a question that has cropped up somewhat frequently[4] in the wake of Johnson II and Welch:  When a defendant was sentenced as an armed career criminal, but the sentencing court did not specify under which clause(s) it found the predicate "violent felony" convictions to qualify, how can the defendant show that a new claim "relies on" Johnson II, a decision that invalidated only the residual clause?  We address that question first.  Because we hold that Defendant's claim "relies on" Johnson II, we then address the merits of the claim and consider whether the Johnson II error at Defendant's sentencing was harmless.

## A.     What It Means for a Claim to "Rely On" *Johnson II*

The threshold question is whether Defendant's claim relies on the rule announced in Johnson II such that he may bring that claim in a second or successive § 2255 motion.  See United States v. Buenrostro, 638 F.3d 720, 721 (9th Cir. 2011) (per curiam) ("[T]he Anti-Terrorism and Effective Death Penalty Act of 1996 precludes [a movant] from filing a 'second or successive' § 2255 motion unless he can show either that he relies on a new rule of constitutional law,

_____

[4] The question has cropped up somewhat frequently because "[n]othing in the law requires a [court] to specify which clause of [the statute]—residual or elements clause—it relied upon in imposing a sentence."  In re Chance, 831 F.3d 1335, 1340 (11th Cir. 2016).  Thus, at many pre-Johnson II sentencings, the court did not specify under which clause it found the ACCA predicate offenses to qualify.

7

§ 2255(h)(2), or 'that no reasonable factfinder would have found [him] guilty of the offense,' § 2255(h)(1)." (alteration in original)).[5] We hold that his claim does rely on Johnson II.

The relevant exception to the bar on second or successive § 2255 motions requires a movant to show that the claim relies on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2) (emphasis added). A claim necessarily "relies on" a rule of constitutional law if the claim is that the movant was sentenced in violation of that constitutional rule. So, to show that a claim relies on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable," it is sufficient for a

---

[5] Though we authorized Defendant to file a second or successive motion, that authorization required only a prima facie demonstration that Defendant's claim "relies on" Johnson II, see 28 U.S.C. § 2244(b)(3)(C); our authorization did not compel the district court to find that Defendant's claim actually relies on Johnson II, nor does it bind us now. See Bible v. Schriro, 651 F.3d 1060, 1064 n.1 (9th Cir. 2011) (per curiam) ("A prima facie showing is a sufficient showing of possible merit to warrant a fuller exploration by the district court, and we will grant an application for [a second or successive] petition if it appears reasonably likely that the application satisfies the stringent requirements for the filing of a second or successive petition." (internal quotation marks omitted)); see also United States v. Villa-Gonzalez, 208 F.3d 1160, 1165 (9th Cir. 2000) (per curiam) ("[A] district court must conduct a thorough review of all allegations and evidence presented by the prisoner to determine whether the motion meets the statutory requirements for the filing of a second or successive motion.").

§ 2255 movant to show that (1) he or she was sentenced in violation of the Constitution and that (2) the particular constitutional rule that was violated is "new," was "previously unavailable," and was "made retroactive to cases on collateral review by the Supreme Court." Here, there is no doubt that the rule in Johnson II meets the latter requirements; the only question is whether Defendant also can show that he was sentenced in violation of the Constitution.

To answer that question, we begin by noting that a court's determination that a defendant qualifies for an ACCA enhancement is a finding. Shepard v. United States, 544 U.S. 13, 25 (2005). As with any finding that is necessary for a conviction—or a sentencing enhancement—it is made (or not made) based on the evidence introduced to the relevant factfinder, and it is generally improper to supplement that evidence on appeal. See Reina-Rodriguez v. United States, 655 F.3d 1182, 1193 (9th Cir. 2011) ("[I]t is not within our province to sentence the defendant based on considerations outside the sentencing decision. Appellate courts are not sentencing courts."); see also United States v. Petite, 703 F.3d 1290, 1292 n.2 (11th Cir. 2013) ("The government cannot offer for the first time on appeal a new predicate conviction in support of an enhanced ACCA sentence."), abrogated on other grounds by Johnson II. And, as with any other finding, a

finding that a defendant qualifies for an ACCA enhancement may be deemed to rest on a valid or an invalid legal theory.

Had the sentencing court stated that the past convictions at issue were convictions for "violent felonies" only under the residual clause, it would have been, in effect, specifying the legal theory on which its ACCA determination rested. We would know that Defendant's sentence was imposed under an invalid—indeed, unconstitutional—legal theory, and that Defendant was, therefore, sentenced in violation of the Constitution. As the Government concedes, a defendant who shows that a sentencing court relied solely on the residual clause in imposing an ACCA enhancement has a claim that "relies on" Johnson II.

Conversely, had the sentencing court specified that a past conviction qualified as a "violent felony" only under the force clause, we would know that the sentence rested on a constitutionally valid legal theory. In that situation, the statute would preclude the filing of a second or successive petition. 28 U.S.C. § 2255(h)(2).

But when it is unclear from the record whether the sentencing court relied on the residual clause, it necessarily is unclear whether the court relied on a constitutionally valid or a constitutionally invalid legal theory. Defendant argues that this situation is analogous to that of a defendant who has been convicted, in a

general verdict, by a jury that was instructed on two theories of liability, one of which turns out to have been unconstitutional. The rule in such a situation is clear: "[W]here a provision of the Constitution forbids conviction on a particular ground, the constitutional guarantee is violated by a general verdict that <u>may have</u> rested on that ground." <u>Griffin v. United States</u>, 502 U.S. 46, 53 (1991) (emphasis added). The case usually cited as the origin of that rule is <u>Stromberg v. California</u>, 283 U.S. 359 (1931), and the rule is sometimes referred to as the "<u>Stromberg</u> principle." <u>United States v. Washington</u>, 861 F.2d 350, 352 (2d Cir. 1988).

We are persuaded that a rule analogous to the <u>Stromberg</u> principle should apply in the sentencing context. It is true that the fact of a prior conviction need not be proved to a jury beyond a reasonable doubt in order for a defendant to be exposed to an enhanced sentence because of that conviction. <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 488–90 (2000). But it does not follow that, when a judge makes a finding that a defendant qualifies for an enhanced sentence, and that finding may rest on an unconstitutional ground, the finding should be treated any differently than a finding made by a jury for the purpose of conviction. Indeed, treating those findings differently because one involves sentencing and the other involves conviction would be contrary to the principle that any "fact increasing either end of [a sentencing] range produces a new penalty and constitutes an

11

ingredient of the offense." Alleyne v. United States, 133 S. Ct. 2151, 2160 (2013). We therefore hold that, when it is unclear whether a sentencing court relied on the residual clause in finding that a defendant qualified as an armed career criminal, but it may have, the defendant's § 2255 claim "relies on" the constitutional rule announced in Johnson II.[6]

We recognize that there are differences between a jury's finding and the type of finding that a court makes when it rules that a defendant qualifies as an armed career criminal. The latter finding rests largely on legal conclusions—state offense X is categorically a "violent felony," state offense Y is not, etc. For that reason, it may be possible to determine that a sentencing court did not rely on the residual clause—even when the sentencing record alone is unclear—by looking to the relevant background legal environment at the time of sentencing. If, for instance, binding circuit precedent at the time of sentencing was that crime Z qualified as a violent felony under the force clause, then a court's failure to invoke the force clause expressly at sentencing, when there were three predicate convictions for crime Z, would not render unclear the ground on which the court's ACCA

---

[6] The Fourth Circuit recently came to a similar conclusion, holding that, "when [a defendant's] sentence may have been predicated on application of the now-void residual clause and, therefore, may be an unlawful sentence under the holding in Johnson II, the [defendant] has shown that he 'relies on' a new rule of constitutional law." United States v. Winston, 850 F.3d 677, 682 (4th Cir. 2017).

12

determination rested. "Even under the traditional Stromberg analysis, a verdict need not be set aside where it is possible to conclusively determine the jury relied on a valid ground . . . ." United States v. Holly, 488 F.3d 1298, 1306 n.5 (10th Cir. 2007). By analogy, a claim does not "rely on" Johnson II if it is possible to conclude, using both the record before the sentencing court and the relevant background legal environment at the time of sentencing, that the sentencing court's ACCA determination did not rest on the residual clause.

Here, however, we cannot draw such a conclusion. At the time Defendant was sentenced in 2007, neither this court nor the Supreme Court had held that either Florida robbery or armed robbery qualified as a "violent felony." (We focus only on the Florida robbery convictions because, if none of those convictions was a conviction for a "violent felony," then Defendant would not have at least three such convictions and would not qualify for an ACCA enhancement.) We had held (or suggested in dicta) that other states' robbery statutes described "violent felonies" both under the force clause, United States v. Melton, 344 F.3d 1021, 1026 (9th Cir. 2003), and under the residual clause, United States v. McDougherty, 920 F.2d 569, 574 n.5 (9th Cir. 1990). The Eleventh Circuit had decided that Florida robbery qualified under the residual clause, United States v. Wilkerson, 286 F.3d 1324, 1325 (11th Cir. 2002) (per curiam), and that Florida armed robbery qualified under

13

the force clause, United States v. Dowd, 451 F.3d 1244, 1255 (11th Cir. 2006). Other courts had held that various states' robbery statutes described "violent felonies" under one or both clauses. See, e.g., United States v. Tirrell, 120 F.3d 670, 680–81 (7th Cir. 1997) (holding that Michigan unarmed robbery qualified under both clauses). Given that background legal environment and the sentencing record, it is unclear whether the district court relied on the residual clause in determining that the Florida robbery convictions qualified as violent felonies. Accordingly, Defendant's claim "relies on" Johnson II.

**B.     Merits**

The next question is whether the Johnson II error is harmless—in other words, are there three convictions that support an ACCA enhancement under one of the clauses of ACCA that survived Johnson II?  If so, then the Johnson II error did not prejudice Defendant, and he is not entitled to relief. United States v. Montalvo, 331 F.3d 1052, 1057–58 (9th Cir. 2003) (per curiam).  We need only consider the Florida robbery convictions because, as noted, if those convictions do not count as predicate convictions under ACCA, then the sentencing court's Johnson II error was not harmless.

**1.     Use of Current Law in Assessing Harmlessness**

14

To decide whether Defendant's Florida robbery convictions qualify him as an armed career criminal, we look to the substantive law concerning the force clause as it currently stands, not the law as it was at the time of sentencing. Critically, this means that we must consider the Supreme Court's interpretation of the force clause in Johnson I. We do so for two reasons.

First, in general, judicial interpretations of substantive statutes receive retroactive effect. See, e.g., Harper v. Va. Dep't of Taxation, 509 U.S. 86, 97 (1993) ("When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule."); see also Rivers v. Roadway Express, Inc., 511 U.S. 298, 312–13 (1994) ("A judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction."). Although the Supreme Court has sometimes been careful to limit that principle to cases on direct review, it has also applied the principle in collateral challenges. See, e.g., Bousley v. United States, 523 U.S. 614, 618–21 (1998) (applying a judicial construction of a statute that post-dated the habeas petitioner's conviction to determine whether the petitioner had been "misinformed . . . as to the

15

elements of [the] offense" before pleading guilty); see also Schriro v. Summerlin, 542 U.S. 348, 351–52 (2004) (noting that "[n]ew substantive rules generally apply retroactively," even "to convictions that are already final").

Second, if this were Defendant's first § 2255 motion, there is no doubt that we would consider the current law to assess harmlessness. In Reina-Rodriguez, we held that "a non-constitutional, substantive [judicial] decision concerning the reach of" ACCA that post-dated the time when the movant's conviction became final applied in an initial § 2255 proceeding. 655 F.3d at 1187–90. In reaching that conclusion, we rejected the Government's argument that the relevant decision could not apply "retroactively." "New substantive rules generally apply retroactively," including "decisions that narrow the scope of a criminal statute by interpreting its terms." Id. at 1188–89 (quoting Summerlin, 542 U.S. at 351). The reason to apply substantive rules retroactively to cases on collateral review is that "decisions that narrow the scope of a criminal statute by interpreting its terms" necessarily raise the risk that people who have been convicted of violating that statute—or whose punishment has been enhanced for violating that statute—"stand[] convicted of an act that the law does not make criminal or face[] a punishment that the law cannot impose upon [them]." Summerlin, 542 U.S. at 352 (internal quotation marks omitted).

16

That reason applies with equal force to a second or successive petition or motion. The habeas petitioner filing a second or successive petition or motion who claims to have been convicted of a crime that was not a crime is at no less risk of being erroneously imprisoned than a habeas petitioner filing a first petition or motion. Accordingly, once the bar to considering a second or successive petition or motion has been overcome, the analysis of the merits is the same as if the petitioner were bringing a first petition or motion. Indeed, the Tenth Circuit has noted that, "if a court hears a second-or-successive § 2254 petition on its merits, the standards are no different than hearing a first § 2254 petition on its merits." Case v. Hatch, 731 F.3d 1015, 1038 n.12 (10th Cir. 2013).

## 2. **Categorical Approach**

We must determine whether robbery, armed robbery, and use of a firearm in the commission of a felony in violation of Florida law qualify as "violent felonies" under the force clause of ACCA. To do so, we employ the categorical approach.[7] E.g., United States v. Parnell, 818 F.3d 974, 978 (9th Cir. 2016). We ask whether

---

[7] The Government does not argue that any of Defendant's Florida robbery convictions might qualify as a violent felony under the modified categorical approach. See Mathis v. United States, 136 S. Ct. 2243, 2249 (2016) (describing the modified categorical approach); Mays v. Clark, 807 F.3d 968, 980 (9th Cir. 2015) (stating that, "[o]n collateral review, relief is appropriate if the prosecution cannot demonstrate harmlessness" (internal quotation marks omitted)).

each statute "has as an element the use, attempted use, or threatened use of physical force against the person of another," 18 U.S.C. § 924(e)(2)(B)(i)—that is, whether the conduct proscribed by the statute necessarily involves "the use, attempted use, or threatened use of physical force against the person of another." In answering that question, "we look at both the text of the state statute and the state courts' interpretations of the statute's terms." United States v. Strickland, 860 F.3d 1224, 1226 (9th Cir. 2017) (internal quotation marks omitted). "State cases that examine the outer contours of the conduct criminalized by the state statute are particularly important because 'we must presume that the conviction rested upon nothing more than the least of the acts criminalized.'" Id. at 1226–27 (brackets omitted) (quoting Moncrieffe v. Holder, 133 S. Ct. 1678, 1684 (2013)).

"[I]n the context of a statutory definition of 'violent felony,' the phrase 'physical force' means violent force—that is, force capable of causing physical pain or injury to another person." Johnson I, 559 U.S. at 140. "Even by itself, the word 'violent' in § 924(e)(2)(B) connotes a substantial degree of force. When the adjective 'violent' is attached to the noun 'felony,' its connotation of strong physical force is even clearer." Id. (citations omitted).

In January 1981, Defendant was convicted of armed robbery in violation of section 812.13(2)(a) of the Florida Statutes. In June of that same year, he was

18

convicted of robbery in violation of section 812.13 of the Florida Statutes and of using a firearm in the commission of a felony in violation of section 790.07(2). And, in September 1981, Defendant was again convicted of armed robbery in violation of section 812.13(2)(a).

At the time of his convictions, section 812.13 defined robbery as "the taking of money or other property which may be the subject of larceny from the person or custody of another, by force, violence, assault, or putting in fear." Brown v. State, 397 So. 2d 1153, 1154 (Fla. Dist. Ct. App. 1981) (emphasis omitted) (quoting Fla. Stat. § 812.13(1) (1979)). To convict a person under section 812.13(2)(a) at that time, the state was required to prove that, "in the course of committing the robbery," the person "carried a firearm or other deadly weapon." Fla. Stat. § 812.13(2)(a) (1981). And to convict a person under section 790.07(2), the state was required to prove that the person, "while committing or attempting to commit any felony or while under indictment[,] display[ed], use[d], threaten[ed], or attempt[ed] to use any firearm or carrie[d] a concealed firearm." Id. § 790.07(2) (1981).[8]

---

[8] We refer to the statutes as they existed at the times of conviction because it is the "version of state law that the defendant was actually convicted of violating" that is relevant to the categorical analysis. McNeill v. United States, 563 U.S. 816, 821–22 (2011). The parties disagree as to whether post-conviction judicial

(continued...)

As an initial matter, the "armed" nature of each of Defendant's convictions does not make the conviction one for a violent felony. A person could be convicted of violating section 812.13(2)(a) for merely <u>carrying</u> a firearm or other deadly weapon during the course of a robbery. Accordingly, it would have been possible for someone to be convicted of violating the statute for carrying a firearm during a robbery even if that firearm was not displayed and the victim of the robbery was unaware of its presence. <u>State v. Baker</u>, 452 So. 2d 927, 929 (Fla. 1984). Similarly, Defendant could have been convicted of violating section 790.07(2) for simply <u>carrying</u> a concealed firearm while committing a robbery.

---

[8](...continued)
interpretations of state statutes should be consulted when determining the content of state law at the time of conviction. <u>McNeill</u> does not necessarily answer that question. <u>See</u> <u>United States v. Faust</u>, No. 14-2292, 2017 WL 3045957, at * 2 (1st Cir. July 19, 2017) (order) (Lynch, J., dissenting from denial of panel reh'g) ("It is far from clear whether <u>McNeill</u> should govern the analysis in a case . . . in which the text of the . . . statute remains unchanged and only judicial interpretations of that statute have developed over time."); <u>see also</u> <u>United States v. Seabrooks</u>, 839 F.3d 1326, 1351 (11th Cir. 2016) (Martin, J., concurring in the judgment) (arguing that post-conviction judicial decisions clarifying or refining the scope of a statute should not be considered when conducting the categorical analysis), <u>cert. denied</u>, 137 S. Ct. 2265 (2017). We need not resolve that uncertainty. Although it is true that the Florida Supreme Court arguably narrowed the scope of the conduct proscribed by the Florida robbery statute in <u>Robinson v. State</u>, 692 So. 2d 883 (Fla. 1997), <u>see</u> <u>Seabrooks</u>, 839 F.3d at 1343–44, the statute as construed post-<u>Robinson</u> is still too broad to qualify as a "violent felony" under the force clause. Accordingly, we look to <u>Robinson</u> and decisions following <u>Robinson</u> in our analysis, because doing so does not change the result.

20

The mere presence of a firearm or other deadly weapon that is never revealed to a robbery victim does not constitute the "use, attempted use, or threatened use of physical force" against the victim. See Parnell, 818 F.3d at 980–81 ("The mere fact an individual is armed, however, does not mean he or she has used the weapon, or threatened to use it, in any way.").

The crucial question, therefore, is whether robbery as defined in section 812.13(1) "has as an element the use, attempted use, or threatened use of physical force against the person of another." The text of the statute itself, together with the relevant Florida caselaw, shows that the answer is "no."

Section 812.13(1) uses the terms "force" and "violence" separately, which suggests that not all "force" that is covered by the statute is "violent force." But only violent force—that is, "strong physical force," Johnson I, 559 U.S. at 140 (emphasis added)—qualifies under the force clause of ACCA. Before even turning to the caselaw, then, there is reason to doubt whether a conviction for violating section 812.13 qualifies as a conviction for a "violent felony."

The Florida caselaw makes it clear that one can violate section 812.13 without using violent force. "[I]n order for the snatching of property from another to amount to robbery, the perpetrator must employ more than the force necessary to remove the property from the person. Rather, there must be resistance by the

21

victim that is overcome by the physical force of the offender." Robinson v. State, 692 So. 2d 883, 886 (Fla. 1997). Crucially, the amount of resistance can be minimal. See Mims v. State, 342 So. 2d 116, 117 (Fla. Dist. Ct. App. 1977) (per curiam) ("Although purse snatching is not robbery if no more force or violence is used than necessary to physically remove the property from a person who does not resist, if the victim does resist in any degree and this resistance is overcome by the physical force of the perpetrator, the crime of robbery is complete." (emphasis added)).[9] Under Florida law, then, a person who engages in a non-violent tug-of-war with a victim over the victim's purse has committed robbery. See Benitez-Saldana v. State, 67 So. 3d 320, 323 (Fla. Dist. Ct. App. 2011) ("[A] conviction for robbery may be based on a defendant's act of engaging in a tug-of-war over the victim's purse."). According to our precedent, such an act does not involve the use of violent force within the meaning of ACCA. See Strickland, 860 F.3d at 1227 (citing an Oregon case in which "the victim and the thief had a tug-of-war over [a] purse" as an example of a case involving something less than violent force within the meaning of Johnson I).

The Florida robbery statute is not as broad as the robbery statute that we considered in Parnell, which proscribed the taking of property from a victim when

---

[9] Mims was cited with approval in Robinson, 692 So. 2d at 886.

22

the victim did not resist at all, provided that the victim was aware of the force. See 818 F.3d at 979 ("The offense need not involve resistance by the victim."). But, like the statute at issue in Parnell, the Florida robbery statute proscribes the taking of property even when the force used to take that property is minimal. See id. at 979–80 ("Because the degree of force is immaterial, any force, however slight, will satisfy [the statute] so long as the victim is aware of it. Such force is insufficient under Johnson[ I]." (citations and internal quotation marks omitted)). In short, the Florida statute requires that the victim resist the force and the statute at issue in Parnell required that the victim be aware of the force, but neither statute requires that the force used be violent force.

We hold that neither robbery, armed robbery, nor use of a firearm in the commission of a felony under Florida law is categorically a "violent felony." We recognize that this holding puts us at odds with the Eleventh Circuit, which has held, post-Johnson I, that both Florida robbery and (necessarily) armed robbery are "violent felonies" under the force clause. See United States v. Lockley, 632 F.3d 1238, 1245 (11th Cir. 2011) (robbery); see also United States v. Fritts, 841 F.3d 937, 942 (11th Cir. 2016) ("[W]e hold here that under Lockley . . . a Florida armed robbery conviction under § 812.13(a) [sic] categorically qualifies as a violent felony under the ACCA's elements clause."), cert. denied, 137 S. Ct. 2264 (2017).

23

But we are bound by our own precedent—including <u>Parnell</u> and <u>Strickland</u>—which may differ from the Eleventh Circuit's interpretation. Moreover, we think that the Eleventh Circuit, in focusing on the fact that Florida robbery requires a use of force sufficient to overcome the resistance of the victim, has overlooked the fact that, if the resistance itself is minimal, then the force used to overcome that resistance is not necessarily <u>violent</u> force. <u>See</u> <u>Montsdoca v. State</u>, 93 So. 157, 159 (Fla. 1922) ("The degree of force used is immaterial. All the force that is required to make the offense a robbery is such force as is actually sufficient to overcome the victim's resistance.").

In summary, none of the Florida robbery convictions qualifies as a "violent felony" under the force clause, so the <u>Johnson II</u> error at Defendant's sentencing was not harmless. Accordingly, Defendant is entitled to relief.

We reverse the district court's order denying Defendant's § 2255 motion and remand with instructions to vacate Defendant's sentence. Because Defendant has already been in prison longer than the statutory maximum sentence for a non-ACCA-enhanced conviction under 18 U.S.C. § 922(g)(1), <u>see</u> <u>id.</u> § 924(a)(2), the district court shall direct that Defendant be released from custody immediately. The mandate shall issue forthwith.

**REVERSED.**